**Edna W. FINLEY, Plaintiff-Appellant,**

v.

**John G. FINLEY, Carol A. Finley Scoggins, and First National Bank, Jefferson City, Tennessee, Defendants-Appellees.**

Court of Appeals of Tennessee,
Eastern Section.

Oct. 9, 1986.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 2, 1987.

C. Douglas Berryhill, Jefferson City, for plaintiff-appellant.

James D. Hutchins, Dandridge, for defendants-appellees Finley and Scoggins.

B.J. Ramsey, Jr., Jefferson City, for First Nat. Bank of Jefferson City.

## OPINION

GODDARD, Judge.

In this suit Edna W. Finley, Plaintiff-Appellant, widow of Lester Finley, seeks to have determined that a certain bank account held jointly by her deceased husband and his two children, John G. Finley and Carol A. Finley Scoggins, Defendants-Appellees, was fraudulently made with the intent to defeat her elective share of the estate and, consequently, under the provisions of T.C.A. 31-1-105,[1] void. The Trial Court, after a full evidentiary hearing, found that the Plaintiff had not carried the burden of proof and dismissed her suit. She appeals, contending the evidence preponderates against this determination.

The parties, both of whom had children by a previous marriage, were married on March 7, 1975. At the time Mr. Finley was a retired coal miner and Mrs. Finley was employed with a manufacturing company in Jefferson City. In November 1977 the account in question was opened at First National Bank of Jefferson City by the deposit of $5000. Subsequent deposits were as follows: May 1980, $15,000; April 1982, $6000; December 1982, $7000. No withdrawals were ever made as to this account and with the accrued interest at the time of Mr. Finley's death totaled almost $44,000.

The initial deposit of $5000 was from a joint account in the name of Mr. Finley and his son. The $15,000 deposit was from the sale of real estate by him and his children to Mrs. Finley, and the last two items of deposits of $6000 and $7000 respectively, from his separate checking account.

In addition to the joint account, Mr. Finley owned in his own name a residential lot improved with a mobile home valued at approximately $10,000. The other assets forming a part of his estate, the value of which is not shown, were various furniture and furnishings located in the mobile home, two guns and two silver dollars.

The parties separated in 1981 and lived in different residences for two or three months, until Mrs. Finley joined him in the trailer and lived there with him until his last illness.

Nine months after the parties were married Mr. Finley's pension was increased $100 because Mrs. Finley was a dependent. Additional increases were granted, but the date and the amounts are not shown. Upon Mr. Finley's death Mrs. Finley was entitled to pension benefits of some $438 per month as his widow and, in addition, certain medical insurance.

Mr. Finley died January 18, 1985, and under his original will he gave $100 each to Mrs. Finley's two children. By codicil dated July 30, 1981, he revoked the gifts to his wife's children and left her the sum of $1.00.

During the period of their marriage Mr. Finley had not made any significant gifts to his wife, with the exception of $2500 he gave her, being the difference in price when she traded cars.

A helpful article on the precise question raised in this case is found in Tennessee Law Review, Volume 50, at page 551, wherein the author reviews prior Tennessee decisions and then addresses the most recent case as of the date of publication, *Warren v. Compton*, 626 S.W.2d 12 (Tenn. App.1981).

We glean from the article and the cases cited therein that the following factors should be considered in determining whether the husband intended to practice a fraud upon his wife: (1) whether the transfer was made with or without consideration, (2) the size of the transfer in relation to the husband's total estate, (3) the time between the transfer and the husband's death, (4) relations which existed between the husband and the wife at the time of transfer, (5) the source from which the property came, (6) whether the transfer was illusory, and (7) whether the wife was adequately provided for in the will.

---

**1.** *31-1-105. Fraudulent conveyance to defeat share voidable.*—Any conveyances made fraudulently to children or others, with an intent to defeat the surviving spouse of his distributive or elective share, is voidable at the election of the surviving spouse.

Under the proof in the present case some of the factors to be considered may be taken as an indication of fraud, while others may not. Taking them in order, it is our opinion that factor numbers two and six may be considered as supporting the widow's position, while factor three, at least insofar as the first two deposits were concerned, if not all, and factor five may be considered favorable to the children.

Three of the factors appear to be inconclusive. As to factor number one, there was no consideration passed as to the opening of the account, but as already noted, the funds insofar as the first two deposits are concerned were owned jointly with the children. As to factor four, although the parties did have difficulty and lived separate and apart for a period of time, they were living together when all of the deposits were made. It is true as to factor seven that the wife was not adequately provided for in the will, but we believe it is proper to consider in connection with this factor other benefits, such as the pension she received upon the death of her husband as neutralizing the inference that might otherwise be drawn.

The Trial Court, which was cited the case of *Warren*, after considering all of the evidence, made the following determination.

In this case, as in most other cases, the plaintiff has the burden of proof to show the facts necessary to sustain the allegations of the Complaint, and to do so by a preponderance of the evidence. Basically, this record shows that the plaintiff, Mrs. Finley, and the decedent were married in 1975, being the second marriage for both of these parties. During the period of their marriage, generally speaking, the parties kept their properties separate, each from the other, particularly is that true with the real estate; each of the parties owning real estate in their own names. They maintained separate bank accounts, as well as, a joint checking account. As regards the real property, the record shows that during the marriage, the decedent acquired a house and lot in Jefferson City, in which he took title in his name and the names of his children, which the plaintiff had full knowledge of at all times. And, in fact, on a later occasion, evidencing again the separateness of the property, she purchased that property from the decedent and from the children, by deeds properly made. This account in question was established in 1977; has not been changed, as far as the names of the account holders are concerned since that time; the plaintiff here had full knowledge of the existence of the account and the way and manner in which it was set up; the proceeds or the funds that went into the account were basically the separate funds of the decedent, acquired by him by virtue of his former employment or investments so made. They would not generally be classified as marital assets, in that they were earned on entitlements thereto, were acquired prior to the marriage to the plaintiff.

The record further shows that the decedent had other bank accounts on occasions in the same manner with his children, which was likewise known to the plaintiff and recognized as certainly being in existence during the period of their marriage.

From this entire record, and taking all the evidence, including some of the matters the Court has pointed out, but certainly not overlooking or not failing to take into account all the evidence that has been presented, this Court is of the opinion and finds that plaintiff has failed to carry the burden of proof to show the establishment of the bank account here in question was made fraudulently by the decedent, with an intent to defeat the rights of the complaining spouse, and that, therefore, the Complaint must be dismissed at the cost of the plaintiff.

■ In non-jury cases our review is *de novo* upon the record with a presumption of the correctness of the findings of fact of the trial judge and his judgment must be affirmed unless the evidence preponderates otherwise. Rule 13, Tennessee Rules of Appellate Procedure. Our reading of the record persuades us that, taken as a whole, the evidence does not preponderate against the Trial Court's judgment.

■ Before concluding, we should emphasize that in determining cases of this

nature the Court should not mechanically list the factors favorable to one party and those favorable to another and add up the total and base his judgment upon that alone, but instead, should consider the weight and significance to be given to each factor under the facts of each particular case.

For the foregoing reason the Trial Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against Mrs. Finley and her surety.

SANDERS and FRANKS, JJ., concur.