IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

---

IN RE:

JEWELL MANESS,

      Plaintiff,

v.

ESTATE OF ACIE LEE MANESS,
Deceased; JAMES LEE MANESS,
WILLIE MANESS & EDWARD MANESS,

      Defendants.

Henderson Chancery No. 8960
    C.A. No. 02A01-9611-CH-00270

Hon. Joe C. Morris, Chancellor

**FILED**

**November 12, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

THOMAS ANDERSON, Lexington, Attorney for Plaintiff.

STEPHEN MILAM, Lexington, Attorney for Defendants.

*REVERSED AND REMANDED*

Opinion filed:

---

TOMLIN, Sr. J.

    Mrs. Jewell Maness ("Plaintiff") as administratrix of the estate of Acie Lee Maness, her deceased husband, filed a petition in the Chancery Court of Henderson County seeking to set aside or void a fraudulent conveyance. Named defendants were the estate, along with James Lee Maness, Willie Maness and Edward Maness, the three sons of plaintiff's deceased husband, who were the grantees under a warranty deed executed by Acie Lee Maness during his life-time. Plaintiff's motion for summary judgment was overruled, whereupon the case went to trial. Following a hearing, the chancellor dismissed plaintiff's petition. On appeal the sole issue for our consideration is whether or not the chancellor erred in dismissing plaintiff's petition. We are of the opinion that the trial court did err. Accordingly we reverse and remand.

    Most if not all of the material facts are undisputed. Plaintiff and Acie Lee Maness were married in February 1975. They remained married until his death in August 1993. At the time of the marriage her deceased husband was the owner of a farm, containing approximately 330 acres, located in Henderson County, on which he and his three sons by a previous marriage kept their individual herds of cattle. This farm is the real estate that is the subject of this litigation. During the time that they were

married both parties worked outside the home. Plaintiff was employed at Brown Shoe and Magnetek and her late husband was employed by the City of Lexington. The parties' enjoyed generally a good relationship during their marriage. The only differences of any substance arose from how their respective incomes were to be spent. As a general rule plaintiff spent her money on the household bills, utilities, groceries and the like and as a general rule Acie Lee Maness spent his money on the farm for such items as buying farm equipment, cattle, sowing pastures, feeding the cattle and making improvements on the farm such as fencing, dozer work and the building of a catfish lake.

The farm was mortgaged for almost the entire period of time the parties were married. During the period of their marriage, Acie Lee Maness made regular payments of principal and interest on the note secured by the mortgage. In point of fact, plaintiff testified that her husband refused to pay any of the household expenses because he contended that all of his income was needed to pay the farm expenses. Acie Lee Maness paid off the mortgage in the fall of 1992.

Acie Lee Maness acquired this farm in separate parcels prior to their marriage. A portion of the farm had been inherited by him from members of his family. Other parts of the farm were purchased by him from either relatives or a neighbor. The record reflects that Acie Lee Maness spent much of his free time on the farm. Most of the time he maintained a herd of cattle on the farm, amounting to 50 or more head. In addition, each of his sons kept a small number of cattle on the farm as well. From time to time each of the sons would assist their father in doing some of the farm maintenance.

It was acknowledged that Acie Lee Maness was in charge of the operation of the farm and was responsible for paying the property taxes on it. James and Edward Maness on a few occasions gave their father $100 to be applied to the property taxes. At different times during his ownership of the farm Acie Lee Maness deeded each of his sons an approximate eight (8) acre parcel of land at the edge of the farm. Two of the sons testified that their father had promised them since they were young children that they would have the farm some day.

2

Plaintiff testified that approximately two weeks prior to her husband's death Acie Lee Maness told her that she was to receive a child's part of the farm and requested that she arrange for an attorney to come to their home to "fix the farm up." She stated that he never regained enough physical strength however to bring this about. She further testified that Acie Lee Maness told her that if his sons got the farm that they would have to pay for it.

The record is uncontradicted that at no time during the marriage of the parties and prior to the death of Acie Lee Maness did plaintiff have any knowledge of the existence of a warranty deed by which Acie Lee Maness had transferred title to the farm in question. Acie Lee Maness died on or about August 19, 1993. Plaintiff testified that on Sunday afternoon or Monday following the burial of her husband on Saturday Edward Maness told her about the deed. She was directed to the Register's Office of Henderson County, where she discovered that a warranty deed signed by her late husband and dated June 14, 1984 had been recorded on August 24, 1993. The deed conveyed title to his three sons, subject to a life estate being retained by Acie Lee Maness. This was the first knowledge plaintiff had that the farm in question was not a part of Acie Lee Maness' estate.

The origin of the warranty deed in question was supplied by the testimony of Steve Beal, a local attorney who prepared the deed, submitted by affidavit, as well as the affidavit and live testimony of Belinda Maness, the wife of Willie Maness and a certified court reporter in this area for many years. She testified that Acie Lee Maness contacted her and requested that she recommend a good attorney to draw up the deed, whereupon she advised him that any attorney in town could accomplish this. Some time thereafter, Steve Beal contacted her and requested that she get two persons to witness the execution of a deed by Acie Lee Maness. Thereafter, she, Acie Lee Maness and his attorney met at the home of friends of hers, Mike and Sandra Jones, where Mr. Maness executed the deed conveying the farm to his three sons. The acknowledgment of the execution of the deed was taken by attorney Beal. There were no signatures of either Mr. or Mrs. Jones identifying them as witnesses to this transaction.

Later that afternoon, according to Belinda Maness, Acie Lee Maness came to her

home.  After Willie Maness, her husband, arrived, Acie Lee Maness presented the deed to Willie Maness with specific instructions that he, Acie Lee Maness, did not want anyone to know about it.  Thereupon Willie Maness gave the deed to Belinda Maness and instructed her to "take this and put it in the lock box", which she did, and there the deed remained until after the death of Acie Lee Maness.

Both Ed Maness and James Maness testified that the first knowledge that each of them had about the deed to their father's farm was after their father's death.  Belinda Maness testified that the deed was never discussed in the presence of the plaintiff and that she was the one who retrieved the deed from the lock box following the death of Acie Lee Maness.

Plaintiff's petition to set aside the conveyance as being fraudulent was filed pursuant to the provisions of T.C.A. § 31-1-105 which reads as follows:

> Any conveyances made fraudulently to children or others, with an intent to defeat the surviving spouse of his distributive or elective share, is voidable at the election of the surviving spouse.

Cases which have previously dealt with this issue make it clear that the gravamen of this action is whether or not the husband intended to practice fraud on his wife.  In Finley v. Finley, 726 S.W.2d 923 (Tenn. App. 1986) the eastern section of this court set forth the following factors which were to be considered in determining if a conveyance had been made with fraudulent intent.  These factors are: (1) the consideration given for the transfer, (2) the size of the transfer in relation to the deceased's total estate, (3) the time between the transfer and the transferor's death, (4) the relations which existed between the spouses at the time of the transfer, (5) the source from which the property came, (6) whether the transfer was illusory, and (7) whether the surviving spouse was adequately provided for in the will.  Finley, 726 S.W.2d at 924.

In Warren v. Compton, 626 S.W.2d 12 (Tenn. App. 1981), an earlier case from the eastern section of this court that dealt with the same issue, the court stated:

> However, we do not limit our considerations to those factors alone.  Circumstances which establish fraudulent intent are as varied as the ingenuity of the human mind may devise.  All facts and circumstances surrounding the transfer must be considered.  Warren, 626 S.W.2d at 17.

4

Furthermore, as stated by this court in <u>Sherrill v. Mallicote,</u> 417 S.W.2d 798, 57 Tenn. App. 241 (Tenn. App. 1967): "In cases of this type there can be no fixed rule of determining when a transfer or gift is fraudulent to a wife; each case must be determined on its own facts and circumstances." <u>Id.</u> at 802.

Following the trial below, the chancellor wrote a letter to counsel for the parties in which he set forth his reasons for ruling that the conveyance by the decedent was not a fraudulent transfer. He noted that the following "facts" served to negate a fraudulent intent: (a) The transfer of the property took place ten years before the death of Mr. Maness; (b) the relationship between Mr. Maness and Mrs. Maness over the years had been a "good one"; (c) the farm was ancestral property and had been owned by Mr. Maness before the marriage; and (d) the fact that Mr. Maness and his three sons had worked the farm openly and continuously for years, with each one of them contributing time, labor and income for the upkeep of the property. As to this factor the court concluded that this was valuable consideration.

In our review of the record, the evidence preponderates against three of the four findings of fact by the chancellor, the exception being that the relationship between husband and wife. This factor is in equipoise, in our opinion.

As to the chancellor's first finding, just because the transfer took place ten (10) years before Mr. Maness' death does not mean it wasn't a fraudulent transfer. As to the farm being ancestral property, the proof is to the effect that only a small portion of the farm was actually inherited ancestral property. Lastly, the sons testified that the only consideration given for the transfer was $10 paid to their father by Willie Maness, and that they considered the labor by them and expenditures made by them in relation to the farm as rent to their father for permitting them to raise their cattle on their father's farm.

In our opinion not only does the evidence preponderate against the conclusion reached by the chancellor, but preponderates in favor of our conclusion that the transfer was a fraudulent one. First of all, the transfer of the farm to the sons under the circumstances was without consideration and without the consent of his wife.

5

Secondly, the size of the transfer was substantial in relation to the total assets of Mr. Maness. Excluding the farm, the uncontradicted testimony is that as to the balance of their combined estate, the personal property had a value of $67,000 and the non-farm real estate $25,000. Plaintiff valued the farm property transferred at $800 an acre or $266,400. Willie Maness testified that the farm land was worth $300 to $400 per acre, and no more than $133,200. With either valuation, the farm is a substantial portion of the estate.

By far and away the most compelling reason for holding that Mr. Maness transferred this property with a fraudulent intent was the cloak of secrecy under which the transfer was made. After employing an attorney to prepare the deed Mr. Maness through his attorney requested a daughter-in-law to find two persons to "witness" the execution of the deed. She did so by arranging a meeting at the friends' home, where the deed was signed by Mr. Maness in their presence and notarized by the attorney. The arranging for the execution of a warranty deed before third-party witnesses is in essence a nullity and adds to the mystery.

The desire for secrecy by Mr. Maness and his intent to insure that his wife knew nothing about this transaction is further spelled out by his presenting the deed after execution to his son Willie, with a specific admonition that no one was to be told about this deed (including his other two sons) and Willie's instruction to his wife that she place the deed in their lock box, which she did. There it remained until some four or five days after the death of Mr. Maness nine years later, when it was recorded. Only then was plaintiff advised about the existence of this document and its effect upon her life.

We reverse the decision of the trial court and hold that this conveyance by Acie Lee Maness was a fraudulent conveyance insofar as his spouse, the plaintiff, was concerned. It is hereby set aside and declared void. As a result thereof, the property sought to be conveyed becomes a part of Acie Lee Maness' estate.

There is nothing in this record to indicate whether Acie Lee Maness died

6

testate or intestate. While it would appear that he died without a will, this court is certain that the status of his estate will be made clear to the trial court upon remand. This case is remanded to the Chancery Court of Henderson County for the determination of what plaintiff's marital rights are and what her distributive share of the estate as the surviving widow would amount to. Costs in this cause on appeal are taxed to defendants, for which execution may issue if necessary.

_____
TOMLIN, Sr. J.

_____
CRAWFORD, P. J., W.S.      (CONCURS)

_____
HIGHERS, J.              (CONCURS)

7