IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2005 Session

## IN THE MATTER OF: THE ESTATE OF LUCILLE JOHNSON HILL, Deceased

**Direct Appeal from the Probate Court for Henry County**
**No. 2108     Hansel J. McCadams, Judge**

_____

**No. W2004-00821-COA-R3-CV - Filed February 17, 2005**

_____

This case involves a surviving spouse's attempt to set aside a financial transaction made by the decedent approximately one year prior to the decedent's death. The trial court voided the transfer and awarded the proceeds to the surviving spouse, determining that the transfer was fraudulent and intended to defeat the interest of the surviving spouse. For the reasons stated herein, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and HOLLY M. KIRBY, J., joined.

William T. Looney, Paris, Tennessee, for the appellant, Harvey A. Stegall.

Richard L. Dunlap, III, Paris, Tennessee, for the appellee, Joseph Hill, Sr.

**OPINION**

*Factual Background and Procedural History*

In 1962, Lucille Johnson Hill ("Decedent") moved to Paris, Tennessee with her husband of fourteen years, Newberry Johnson. Mr. Johnson died in 1992. The appellee Joseph Hill, Sr. ("Husband") moved to Paris, Tennessee in 1990 with his former wife who deceased eighteen months later. Decedent and Husband met sometime thereafter. On March 11, 1995, Decedent married Husband. At the time of their marriage, Decedent was sixty-nine (69) years of age and Husband was seventy-five (75). The couple separated nearly five years later on March 7, 2000 but never divorced. On December 20, 2000, after the onset of a terminal illness that quickly caused her health to deteriorate, Decedent died intestate leaving no issue. She was survived by Husband, her half-brother, the appellant Harvey A. Stegall ("Brother"), and two half-sisters. The center of this dispute concerns an investment transaction made by Decedent approximately thirteen (13) months prior to her death.

During the couple's relatively brief marriage, each spouse maintained separate bank and investment accounts, and neither had check-writing authority on the other's accounts. Decedent's bank and investment accounts were without exception jointly titled with Brother. Brother worked in the banking business and had handled Decedent's finances for many years, dating back to her prior marriage to Mr. Johnson. In his testimony, Brother stated that, while he advised Decedent and she typically followed his advice, he always followed Decedent's instructions with regard to her investments. He testified that he was named as joint-owner of Decedent's accounts because, based on his experience, a "co-owner account was very sufficient to do what needed to be done." Brother further stated that Decedent's other siblings knew how Decedent's accounts were titled and that Decedent desired the arrangement because Brother would "know how to take care of it" in the event of her death.

In July of 1992, Decedent purchased two five-year certificates of deposit ("CDs") from First National Bank in Blytheville, Arkansas, the bank where Brother worked at the time (the "FNB CDs"). The FNB CDs showed the depositors' names as "Lucille Johnson or Harvey Stegall" and indicated that they were owned jointly with survivorship. CD No. 46214 was purchased for $52,515, and CD No. 46225 was purchased for $10,000. On March 14, 1995, three days following Decedent's and Husband's marriage, the FNB CDs were amended to reflect Decedent's married name, resulting in the payee being shown as "Lucille Johnson Hill or Harvey Stegall." While it is certainly not crystal clear from the record, it appears that after the FNB CDs matured in 1997, the proceeds continued to be held with First National Bank in some form or another.

Husband testified that in 1999, Brother mailed "one" CD to Decedent "with $62,000 something dollars." Husband further stated that he and Decedent had an argument about which financial institution to invest the funds from the CD. In his testimony, Husband claimed that Decedent wanted to invest the money in an Edward Jones account, but Husband refused to assist her because he had investments with Edward Jones that were "losing money every day."

On November 24, 1999, Decedent took this CD or a check representing the proceeds thereof to her local bank in Paris, Commercial Bank & Trust Company. While at Commercial Bank, Decedent met with Beverly Neighbors, Manager of Invest Financial Corporation ("IFC"), an investment branch of Commercial Bank & Trust. Ms. Neighbors testified that Decedent established an investment account, Account No. E8D-017019, with the sole asset being a "brokered" CD in the original amount of $30,000 (the "IFC Account"). The IFC Account was made transferable on death to Brother. The record shows a personal check from the joint account of Decedent and Brother as the source of funds for the IFC Account. Ms. Neighbors testified that Decedent stated at the time that "she and [Husband] were not living together" and that "[Decedent] wanted [Brother] to have the money" in the event of her death. In addition to establishing the IFC Account, Decedent also purchased a one-year CD through Commercial Bank on November 24, 1999.

In early December 2000, Decedent suddenly became ill. She passed away on December 20, 2000. Husband filed a Petition for Letters of Administration seeking to be appointed administrator of Decedent's estate. Shortly after filing this petition, Husband filed a motion seeking a restraining

order against IFC. Husband's motion sought an order restraining IFC from distributing the proceeds of the IFC Account. The trial court granted Husband's motion and issued an order freezing the IFC Account. Husband was subsequently granted Letters of Administration to serve as administrator of Decedent's estate. Meanwhile, on March 14, 2001, Husband sold two parcels of real property that he received as Decedent's surviving spouse for the sum of $100,000. All of Decedent's bank and investment accounts that were not affected by the restraining order passed to Brother as joint tenant with right of survivorship.[1] Trial was held on September 8, 2003. Nearly seven months later, on February 27, 2004, the trial court entered its order finding as follows:

1. That [Decedent] and [Husband] were married on March 11, 1995;

2. That a certificate of deposit in the sole name of [Decedent] was amended three (3) days after her marriage to [Husband] to add the name of [Brother] as joint owner;

3. That on Nov. 24, 2000, [Decedent] transferred $32,564.25 from said joint account with Brother at Commercial Bank & Trust Company to [the IFC Account];

4. That at the time of the transfer to [the IFC Account], [Decedent] and [Husband] were living separate and apart, and [Decedent] stated to Beverly Neighbors, the [IFC] representative at Commercial Bank, that "she did not want her husband to have any of the money;"

5. That the amendment to the certificate of deposit referenced in the preceding paragraph No. 2, the proceeds of which were used to purchase the financial instrument referred to in the preceding paragraph No. 3, was a fraudulent transfer by [Decedent] with the intent to defeat the interest of [Husband] in contravention of T.C.A. 31-1-105;

6. That the purchase of the financial instrument on November 24, 2000, as set forth in the preceding paragraph No. 3 was a fraudulent transfer by [Decedent] with the intent to defeat the interest of [Husband] in contravention of T.C.A. 31-1-105.

7. That [Decedent] died on December 20, 2000.

8. That all other accounts of [Decedent] with [Brother] are not found to be created to fraudulently defeat the interest of [Husband].

It is, therefore, ORDERED, ADJUDGED AND DECREED that [the IFC Account] is found to be the proper property of [Husband], the surviving spouse of [Decedent];

It is further ORDERED, ADJUDGED AND DECREED that the Restraining Orders previously issued in this case are hereby dissolved and that [IFC], located at Commercial Bank & Trust Company, c/o Beverly Neighbors, 101 N. Poplar St.,

---

[1] Upon Decedent's death, Brother received two checks from Commercial Bank & Trust in the total amount of $14,948.15. He also received a money order in the amount of $87,222.64 from First Security State Bank of Caruthersville, Missouri. Finally, he received a check drawn on SouthBank of Blytheville, Arkansas in the amount of $53,219.47.

Paris, Tennessee, cause the proceeds of said certificate of deposit to be paid to [Husband];

It is further ORDERED, ADJUDGED AND DECREED that all other accounts of [Decedent] held jointly with [Brother] are held to be the property of [Brother].

The sole issue raised on appeal is whether the trial court erred in determining that the November 24, 1999 transfer by Decedent to the IFC Account was a fraudulent transfer intended to defeat Husband's interest as surviving spouse in contravention of section 31-1-105 of the Tennessee Code.[2]

### *Standard of Review*

In a non-jury case, we review the trial record *de novo*; however, the trial court's findings of fact are presumed correct, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d) (2004); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn.1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996).

### *Law and Analysis*

The leading case in this state addressing fraudulent transfers in violation of section 31-1-105 is *Finley v. Finley*, 726 S.W.2d 923 (Tenn. Ct. App. 1986). *Finley* involved a wife's allegations that her husband had created certain bank accounts with the intent to fraudulently defeat her elective share. *Finley*, 726 S.W.2d at 924. The *Finley* court established certain factors that the trial court should consider in its determination of whether a conveyance should be voided under section 31-1-105. *Id.* Those factors are as follows:

(1) whether the transaction was made with or without consideration, (2) the size of the transfer in relation to the [decedent's] total estate, (3) the time between the transfer and the [decedent's] death, (4) relations which existed between the [decedent] and the [surviving spouse] at the time of the transfer, (5) the source from which the property came, (6) whether the transfer was illusory, and (7) whether the [surviving spouse] was adequately provided for in the will.

---

[2]Section 31-1-105 provides, in pertinent part, as follows:

**31-1-105. Fraudulent conveyance to defeat share voidable.** — Any conveyance made fraudulently to children or others, with an intent to defeat the surviving spouse of the surviving spouse's distributive or elective share, is, at the election of the surviving spouse, includable in the decedent's net estate under § 31-4-101(b). . . .

Tenn. Code Ann § 31-1-105 (2004).

-4-

*Id.* These factors should not be applied mechanically, but rather, "the weight and significance to be given to each factor [will depend upon] the facts of each particular case." *Id.* at 926; *see also Warren v. Compton*, 626 S.W.2d 12, 17 (Tenn. Ct. App. 1981) ("All facts and circumstances surrounding the transfer must be considered.").

Turning now to the facts of this case, we feel that the evidence in the record preponderates against the trial court's determination that Decedent's establishment of the IFC Account was a fraudulent transfer in violation of section 31-1-105. First, the trial court found that, three days after Decedent's and Husband's marriage, "a certificate of deposit" was amended to add Brother's name as joint owner. Clearly, this finding is in error, and both parties have conceded as much in their briefs to this Court. Although it is unclear exactly which CD the trial court was referring to, we assume the trial court is referring to the *two* FNB CDs, and the record clearly shows that the FNB CDs were amended simply to reflect the Decedent's newly-acquired marital name of "Hill." Next, the trial court found in paragraph three (3) of its order that on November 24, 2000, Decedent funded the IFC Account with $32,564.25 taken from a "said" joint account held with Brother at Commercial Bank. It appears that, in paragraph 3, the trial court was referring to the joint checking account Decedent used to draft the $30,000 check which funded the IFC Account. However, the trial court made no previous mention of this "said" account, only referring to, as mentioned above, "a certificate of deposit." Additionally, the IFC Account was opened on November 24, *1999*, not in 2000. Notwithstanding these apparent clerical mistakes, it is clear that the factual error made with regard to the amendment of the FNB CDs led to the trial court's erroneous conclusions in paragraphs five (5) and six (6) of its order that the creation of the IFC Account was a fraudulent transfer. Furthermore, Ms. Neighbors' testimony as quoted in the trial court's order is not wholly accurate. Rather than testifying that Decedent affirmatively stated that she "did not want her husband to have any of the money," Ms. Neighbors' testimony was that Decedent told her that she wanted her brother to have the proceeds of the account in the event of Decedent's death. We believe there is an important difference, especially in view of the long-established ownership structure of Decedent's financial accounts.

From our review of the record, the evidence clearly demonstrates that all of Decedent's financial accounts were held in co-ownership with Brother. There is no evidence to the contrary. Therefore, we conclude that whatever funds were used to open the IFC Account were jointly held by Decedent and Brother. Those funds were placed temporarily in Decedent's and Brother's joint checking account with Commercial Bank, with that account serving merely as a conduit or mechanism to facilitate the transfer to the IFC Account. Thus, we agree with Brother's argument that this transaction was simply a reinvestment and not any type of fraudulent transfer in contravention of section 31-1-105. Accordingly, it is unnecessary for us to engage in an analysis of the *Finley* factors as they apply to this transaction, although we believe an application of those factors to the facts in this case would support our conclusion.

### *Conclusion*

The judgment of the trial court is reversed. Investment Financial Corporation Account No. E8D-017019 is hereby released to the appellant Harvey A. Stegall. Costs of this appeal are taxed to the appellee Joe Hill Sr., for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE