IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 2, 2012

NORMA SIMPSON, individually and next of kin of J.W. Simpson
v. FAYE FOWLER, ET AL.

Direct Appeal from the Chancery Court for Obion County
No. 28,448     W. Michael Maloan, Chancellor

No. W2011-02112-COA-R3-CV - Filed August 28, 2012

This is an appeal from the trial court's order, setting aside certain transfers by decedent to Appellant. Decedent and Appellee were married, but had been separated for over twenty years. Before his death, Decedent transferred certain property to his paramour, the Appellant herein. When Decedent died, Appellee, his surviving, but estranged spouse petitioned the court to set aside the transfers to Appellant under Tennessee Code Annotated Section 31-1-105. The trial court made certain findings from the bench, but the trial court did not incorporate these oral findings into its order as required under Tennessee Rule of Civil Procedure 52.01, and specifically made no finding that Decedent acted fraudulently or with intent to deprive Appellee of her share of the estate as required for application of Tennessee Code Annotated Section 31-1-105. Accordingly, we vacate and remand to the trial court for further proceedings.

Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Vacated
and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the appellant, Faye Fowler.

Bruce S. Conley, Union City, Tennessee, for the appellee, Norma Simpson.

OPINION

Appellee Norma Simpson and J.W. Simpson ("Decedent") were married on May 17, 1951. In October of 1967, the Simpsons were divorced but reconciled after eight months.

The Simpsons married again in June of 1968 and they lived together until about 1990, when they again separated. At that time, Ms. Simpson moved into her mother's home, and Mr. Simpson remained in the marital residence. Although the Simpsons did not reconcile, neither filed for divorce. Mr. Simpson did not support Ms. Simpson after their final separation, except that Ms. Simpson continued her health insurance coverage under Mr. Simpson's policy.

In 1992 or 1993, Mr. Simpson began a relationship with Appellant Faye Fowler. Mr. Simpson and Ms. Fowler never lived together, but were involved until Mr. Fowler's death on February 11, 2010. Mr. Simpson died intestate. During his relationship with Ms. Fowler, sometime in 2005, Mr. Simpson changed the ownership of his bank account at First State Bank to a joint account with right of survivorship with Ms. Fowler. Both Ms. Simpson and Ms. Fowler testified that neither of them had written checks on this account during their respective relationships with Mr. Simpson. Ms. Fowler testified that she neither deposited, nor withdrew any funds from this account, and that she thought that the account funds were comprised of Mr. Simpson's pension and social security benefits. At the time of Mr. Simpson's death, the checking account had a balance of approximately $28,000. Mr. Simpson also changed the beneficiary on both his MetLife Company, and Minnesota Life Insurance Company life insurance policies to Ms. Fowler. The total benefit under both policies was approximately $8,500. The insurance policies and the bank account totaling approximately $36,500 are the disputed assets in this lawsuit.

On February 11, 2010, Ms. Simpson, individually and as next-of-kin of J.W. Simpson filed a complaint and application for restraining order against Ms. Fowler, seeking to set aside Decedent's transfer of the First State Bank account funds, and the proceeds of the two life insurance policies to Ms. Fowler. On February 25, 2010, the trial court granted Ms. Simpson's request for a temporary injunction, enjoining Ms. Fowler from using or transferring any of the disputed funds. On March 10, 2010, Ms. Fowler filed her answer and counter-complaint, seeking attorney's fees and costs on the ground that Ms. Simpson's lawsuit was frivolous.

On May 17, 2011, the trial court conducted a bench trial. Following the trial, the court held that the transfers to Ms. Fowler should be set aside under Tennessee Code Annotated Section 31-1-105. On June 9, 2011, the trial court entered an order, which reads, in its entirety, as follows:

> This cause is before the Court on the 17th day of May 2011, on the Complaint of the Plaintiff, the Answer and Counter-Complaint of the Defendant, the Answer to the Counter-Complaint, the testimony of the parties and other

witnesses, and from a consideration of the record and applicable
authorities.

It satisfactorily appears to the Court that Tennessee Code
31-1-105 is applicable to the facts and issues in this litigation,
and that the transfers of J.W. Simpson to Faye Fowler should be
set aside.

IT IS, THEREFORE, ORDERED BY THE COURT that
all transfers to Faye Fowler by J.W. Simpson, including the
survivorship account at First State Bank, the change of
beneficiary of policies at MetLife Company and Minnesota Life
Insurance Company are all set aside, and the funds from these
transfers are to be paid into the office of the Chancery Court
Clerk pending the administration of the Estate of J.W. Simpson.

Ms. Fowler filed a timely notice of appeal from this order. However, upon review of
the record, this Court determined that the June 9 order was not final as it did not adjudicate
Ms. Simpson's request for treble damages or Ms. Fowler's counter-complaint. In response
to our show cause order of March 1, 2012, the Appellant supplemented the appellate record
with an order, which was filed in the trial court on March 27, 2012. This order states, in
pertinent part, that Ms. Simpson's "request for treble damages and [Ms. Fowler's] counter-
complaint are both dismissed." The order now appears final for purposes of this appeal as
all claims have been adjudicated.

The sole issue presented for review is whether the trial court erred in setting aside the
transactions made by Decedent to Ms. Fowler.

Because this case was tried by the court sitting without a jury, we review the case *de
novo* upon the record with a presumption of correctness of the findings of fact by the trial
court. Unless the evidence preponderates against the findings, we must affirm, absent error
of law. *See* Tenn. R. App. P. 13(d). However, "if the trial judge has not made a specific
finding of fact on a particular matter, we will review the record to determine where the
preponderance of the evidence lies without employing a presumption of correctness." ***Forrest
Construction Co., L.L.C. v. Laughlin***, 337 S.W.3d 211, 220 (Tenn. App. Ct. 2009) (citing
***Ganzevoort v. Russell***, 949 S.W.2d 293, 296 (Tenn. 1997)).

In the instant case, the trial court made the following, relevant comments from the
bench:

And the case law in support of that statute [i.e., Tenn. Code
Ann. 31-1-105] make[s] it clear that you don't actually have to

-3-

prove a fraudulent intent on the part of Mr. Simpson in this case, but you look at the total factors from our case law as to whether or not those conveyances were fraudulent and for the purpose of defeating Mrs. Simpson in this case of her elective share and widow's rights.

So we have to look more at the effect of the transfer than the purpose and intent of Mr. Simpson.

The court then proceeds to consider certain factors, including:

The numerous factors which the Court [has] to consider are, was the transfer made without consideration. And Ms. Fowler was very clear that. . .this was Mr. Simpson's money, and she did not put any money into the account. . . .

Number 2: the size of the transfer in relationship to the total assets of Mr. Simpson. The proof in this case is this is the bulk of his estate, so this was virtually all of the transfer of his estate to Ms. Fowler.

Number 3: the time of the transfer and the death of the donor spouse: This transfer was made in 2005. Mr. Simpson died in the year 2010. Number 4: the relationship which existed between the husband and the wife a the time of the transfer, and they had been estranged for twenty years, without dispute.

Number 5: the source of which the property came from. Again, it's without dispute that Mr. Simpson contributed all the money to this account and that Ms. Fowler did not contribute any.

The court then concluded:

Now, taking all these factors into consideration, they preponderate in favor of the plaintiff in this case in that this transfer in effect—the effect of it did deprive Mrs. Simpson of her statutory rights as a surviving widow of Mr. Simpson.

There are two problems with these proposed findings. First, none of them are incorporated into the trial court's order, *see supra*. Second, the trial court appears to misapprehend the relevant law pertaining to Tennessee Code Annotated Section 31-1-105. The trial court found that the effect of the transfer to deprive Ms. Simpson of her share of the estate is sufficient to set the transfer aside under the statute. However, we hold that the

statute requires that the trial court must also determine whether Mr. Simpson possessed the intent to deprive Ms. Simpson of her share of the estate as well. We will address each of these points of error.

## "Findings" not Incorporated into Final Order

It is well settled that a court speaks through its orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). In *Cunningham v. Cunningham*, No. W2006–02685–COA–R3–CV, 2008 WL 2521425 (Tenn. Ct. App. June 25, 2008), this Court explained:

> A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor. A judge may modify, reverse, or make any other change in his judgment that he may deem proper, until it is entered on the minutes, and he may then change, modify, vacate or amend it during that term, unless the term continues longer than thirty days after the entry of the judgment, and then until the end of the thirty days.

*Cunningham*, 2008 WL 2521425, at *5 (citing *Broadway Motor Co., Inc. v. Fire Ins. Co.*, 12 Tenn. App. 278, 280 (1930)). Consequently, "[w]e do not review the court's oral statements, unless incorporated in a decree, but review the court's order and judgments for that is how a court speaks." *Id*. Moreover, it is well settled that, in bench trials, courts must make findings of fact and conclusions of law to support their rulings. Rule 52.01 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

*Id.* Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See Poole v. Union Planters Bank N.A.*, No. W2009–01507–COA–R3–CV, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule

52.01 requires the court to make these findings regardless of a request by either party. *Id*.

This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008–01144–COA–R3–PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id*.; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct . App. 1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision ." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.*, No. M2003–01739–COA–R3–PT, 2004 WL 865840, at *19 (Tenn. Ct. App. April 21, 2004)).

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law pursuant to Rule 52.01 is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Lake v. Haynes*, No. W2010–00294–COA–R3–CV, 2011 WL 2361563, at * 1 (Tenn. Ct. App. June 9, 2011). However, this Court has previously held, that when faced with a trial court's failure to make specific findings, the appellate courts may "soldier on" when the case involves only a clear legal issue, *Burse v. Hicks*, No. W2007–02848–COA–R3–CV, 2008 WL 4414718, at *2 (Tenn. Ct. App. Sept. 30, 2008), or when the court's decision is "readily ascertainable." *Burgess v. Kone, Inc.*, No. M2007–0259–COA–R3–CV, 2008 WL 2796409, at * (Tenn. Ct. App. July 18, 2008). Unfortunately, that is not possible in this case. Although the trial court's statements from the bench provide guidance as to its thought process, we conclude that the court misconstrued the relevant case law concerning Tennessee Code Annotated Section 31-1-105. Specifically, the court did not make a definite finding that Mr. Simpson intended to commit fraud or to otherwise deprive Ms. Simpson of her share of his estate. Although we have attempted to " soldier on " in an effort to resolve this matter we have determined that, based on the unique facts of this case, we should not be the initial decision-maker on whether Mr. Simpson possessed the requisite intent required by the statute. *See Alsip v. Johnson City Med. Ctr.*, No. E2004-00831-COA-R9-CV, 2005 WL 1536192, at *7 (Tenn. Ct. App. June 30, 2005) (describing this Court as "an error-correcting intermediate appellate court").

**No Finding of Fraud or Intent to Deprive Ms. Simpson of her Elective Share**

Tennessee Code Annotated Section 31-1-105 provides:

> Any conveyance made fraudulently to children or others, with
> an intent to defeat the surviving spouse of the surviving spouse's

distributive or elective share, is, at the election of the surviving spouse, includable in the decedent's net estate under § 31-4-101(b), and voidable to the extent the other assets in the decedent's net estate are insufficient to fund and pay the elective share amount payable to the surviving spouse under § 31-4-101(c).

Cases that have previously dealt with this issue make it clear that the gravamen of this action is whether the decedent spouse intended to practice fraud on the surviving spouse. In *Finley v. Finley*, 726 S.W.2d 923 (Tenn. Ct. App. 1986) the Court set forth the following factors to be considered in determining if a conveyance has been made with fraudulent intent. These factors include: (1) the consideration given for the transfer, (2) the size of the transfer in relation to the decedent's total estate, (3) the time between the transfer and the transferor's death, (4) the relations which existed between the spouses at the time of the transfer, (5) the source from which the property came, (6) whether the transfer was illusory, and (7) whether the surviving spouse was adequately provided for in the will. *Id*. at 924.

In *Warren v. Compton*, 626 S.W.2d 12 (Tenn. Ct. App. 1981), this Court dealt with the same issue, and stated:

> However, we do not limit our considerations to those factors alone. Circumstances which establish fraudulent intent are as varied as the ingenuity of the human mind may devise. All facts and circumstances surrounding the transfer must be considered.

*Id*. at 17. Furthermore, as stated in *Sherrill v. Mallicote*, 417 S.W.2d 798 (Tenn. Ct. App. 1967): "In cases of this type there can be no fixed rule of determining when a transfer or gift is fraudulent . . . each case must be determined on its own facts and circumstances." *Id*. at 802.

As set out in its ruling from the bench, the trial court held that the case law interpreting Tennessee Code Annotated Section 31-1-105 "make[s] it clear that you don't actually have to prove a fraudulent intent. . .but you look at the total factors from our case law as to whether or not those conveyances were fraudulent, and for purposes of defeating [the surviving spouse] of her elective share and widow's rights." This statement indicates a misapprehension of the relevant law. In order to set aside a conveyance under Tennessee Code Annotated Section 31-1-105, there must be a finding of fraud or intent to defeat the surviving spouse's elective share. In fact, this inquiry is the gravamen of the case. Although the trial court must find fraud or intent to defeat, the trial court is correct that the factors it may consider are quite varied. Those factors, however, must support a finding of fraud or

intent on the part of the decedent spouse and the trial court must make this finding. Here, the trial court looked only to the "effect" of the transfers, but did not go further and determine whether the "effect" of the transfers established the required statutory intent. In so doing, it appears that the trial court relied upon a portion of this Court's opinion in **Sherrill v. Mallicote**, 417 S.W.2d 798 (Tenn. Ct. App. 1967), wherein we stated, in relevant part, that:

> Intention and purpose are not necessarily the controlling factors in determining whether a transfer is fraudulent. One must take into consideration the effect of the transfer. In other words, if the properties transferred prior to death are of such a quantity in relation to the total estate as the widow is substantially deprived of that which she would otherwise take under our statutes, then from such a transfer fraud may be presumed under certain conditions and circumstances.

*Id*. at 803. While the effect of the transfer is certainly a relevant consideration, even if the effect of the disputed transfer is to deprive the surviving spouse of his or her share of the estate, the court must still find that the decedent's intent was to do so. See *id.* (setting aside the conveyance because the facts showed that the "transfer was made with the fraudulent intent to defeat the widow of her distributive share").

This interpretation is supported by **Warren v. Compton**, which discusses the application of the statues in effect prior to the enactment of Tennessee Code Annotated Section 31-1-105:

> The courts of Tennessee have interpreted the foregoing statutes to apply only to conveyances made by the husband with the actual intent to defeat the widow of her dower interest in the land conveyed, **which intent may be inferred from circumstantial evidence**. **Hughes' Lessee v. Shaw**[,] 8 Tenn. 323 [(Tenn. 1872)]. The lack of full consideration standing alone is not sufficient evidence to infer an intention to defraud. **McIntosh v. Ladd**[,] 20 Tenn. 459 [(Tenn. 1840)].

**Warren**, 626 S.W.2d at 15–16 (emphasis added); *see also* Pritchard on the Law of Wills and Administration of Estates, Chapter 20-24, § 835 n.32 (2009) ("Intent to defraud surviving spouse must be clear, though it need not be expressly stated.") (citing **Hughes' Lessee v. Shaw**, 48 Tenn. 323, 1827 WL 672 (Tenn. 1827)). The **Warren** court noted that the statute has been "drastically changed since its enactment[,]" but that the requirement of intentionality remains the same:

Obviously, the statute has been drastically changed since its enactment in 1784. It now applies to the surviving spouse instead of to the widow, and it applies to the rights of the surviving spouse in a distributive or elective share in the entire estate of the deceased spouse. There is, however, one aspect of the statute that has remained constant, namely, before the statute is applicable the transfer of property must have been made fraudulently with an intent to defeat the rights of the complaining spouse. Case law under the prior statutes on the issue of what is a fraudulent transfer with an intent to defeat the rights of the complaining spouse will govern.

*Warren*, 626 S.W.2d at 16. One such case is *Hughes' Lessee v. Shaw*, wherein the Tennessee Supreme Court inferred that the decedent intended to defraud his surviving spouse by giving all his property to his son, based not on any proof as to the decedent's state of mind at the time of the transfer, but as to the circumstances surrounding and effect of the transfer:

Now the fact of her being defeated of dower is conclusively demonstrated by this proof; for, the son getting all, she can get none. Is not the intent fraudulently to defeat her right shown as conclusively? Must he not have intended that she should get none, when he conveyed all to another? and must it not have been done fraudulently as to her, as it occurred without the presence of necessity, being without any valuable consideration, and when he knew it would deprive his wife of that provision for her support which the law provides for her? There can be but one answer to these inquiries.

*Hughes' Lessee*, 1827 WL 672, at *3. Relying on *Hughes' Lessee* and other cases, the *Warren* court held that:

[T]he only time the statute is applicable is where there is a fraudulent transfer with the intent to deprive the surviving-spouse of his or her share of the estate of the donor-spouse. If a transfer is in fact illusory,[1] that is one factor

---

[1] "The word 'illusory' is defined in Black's Law Dictionary, page 918, 3rd Edition (1933), as 'deceiving by false appearances; nominal as distinguished from substantial.' As used in defining a transfer

(continued...)

> to consider in determining the intent of the donor-spouse, but ***the intent to defeat the rights of the surviving-spouse must be found to exist at the time of the transfer in order to make the statute applicable.***

*Warren*, 626 S.W.2d at 17 (emphasis added).

Accordingly, under a proper application of Tennessee Code Annotated Section 31-1-105, the trial court should consider the objective factors as set forth in *Finley*, as well as any other relevant considerations, to determine whether the decedent in fact intended to commit fraud or intentionally deny the surviving spouse of his or her share of the estate. *See Finley v. Finley*, 726 S.W.2d 923, 925 (Tenn. Ct. App. 1986) (noting that the court should consider whether the facts supporting each factor "may be taken as an indication of fraud"). Consequently, the court may rely upon the effect of the transfer, but must actually find that the effect of the transfer supports a finding of intent to deprive on the part of the decedent spouse. Here, the trial court makes no such finding. Rather, the court simply concluded that because the "effect" of the transfer was to deprive Ms. Simpson of her widow's share of the estate, that finding was sufficient to set aside the transfers. While it may be true that the transfers worked to deprive Ms. Simpson of her widow's share, without a finding of intent to accomplish this result on the part of Mr. Simpson, the fact that the transfer lessened Ms. Simpson's share of the Decedent's estate is not sufficient to set aside the transfers under Tennessee Code Annotated Section 31-1-105. *See McClure v. Stegall*, 729 S.W.2d 263 (Tenn. Ct. App. 1987) (holding that the surviving spouse failed to prove that the decedent intended to deprive her of her distributive share by placing over $150,000.00 in certificates of deposit in the decedent's mother's name). Because the trial court did not make a specific finding of fraud or intent to deprive, it is impossible for this Court to review the trial court's order in any meaningful way.

Our holding here does not preclude the trial court from allowing the parties to offer more, or different, evidence. Although we concede that the trial court may reach the same conclusion, it is required to make specific findings of fact and conclusions of law in its order, including (if the same outcome is reached) a finding that Mr. Simpson's intent, in making the transfers to Ms. Fowler, were for purposes of fraud or were made with intent to deprive Ms. Simpson of her share of the estate.

---

[1](...continued)
of property we treat the word as meaning that the transferor retained such elements of ownership and control over the property as renders the purported transfer deceptive, incomplete and misleading-a pretended transfer rather than a real transfer." *Warren*, 626 S.W.2d at 19.

For the foregoing reasons, we vacate the trial court's order and remand for further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed one-half to the Appellant, Faye Fowler, and her surety, and one-half to the Appellee, Norma Simpson, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE